## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNY/OBAYASHI IV, | ) | |
|   A JOINT VENTURE LLP | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE METROPOLITAN DISTRICT | ) | |
| COMMISSION, HARTFORD COUNTY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Kenny/Obayashi IV, A Joint Venture LLP ("KOJV"), by and through its undersigned counsel, files this Complaint against Defendant, The Metropolitan District Commission, Hartford County ("MDC"), and in support thereof, states as follows:

## PARTIES

1.      KOJV is a joint venture with its principal place of business located at 55 Main Street, Hartford, Connecticut 06412.

2.      KOJV is comprised of two joint venture partners: (i) Kenny Construction Company, an Illinois company with its principal place of business located at 2215 Sanders Road, Suite 400, Northbrook, Illinois 60062; and (ii) Obayashi Corporation, a corporation organized and existing under the laws of Japan, with its principal place of business in the United States located at 577 Airport Blvd, Suite 600, Burlingame, California 94010.

3.      The MDC is a municipal corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located at 555 Main Street, Hartford, Connecticut 06412.

12455175v1

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the causes of action asserted in this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because complete diversity of citizenship exists between the partners of KOJV and the MDC.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district, a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district, and a substantial amount of the property that is the subject of this action is in this judicial district.

## NATURE OF THE ACTION

6.      This is an action for damages resulting from the MDC's breach of its contractual obligation to compensate KOJV for costs incurred while performing tunnelling work on a project known as the South Hartford Conveyance and Storage Tunnel and Shaft Construction (the "Project").

7.      While work was proceeding in the initial reach of the Project tunnel, KOJV encountered water inflows that differed substantially and materially from what was indicated to bidders in the Contract Documents.  As a result of the conditions encountered and deficiencies in the specifications, construction drawings, and other Contract Documents, KOJV incurred significant additional costs and its performance was delayed.

8.      In breach of its contractual obligations, the MDC and its representatives failed to investigate the conditions encountered by KOJV and failed to make an equitable adjustment to the Contract Price and Contract Time in accordance with contractual requirements.

9.      As a direct and proximate result of the MDC's actions and inactions, KOJV has been damaged in excess of the jurisdictional amount, the precise amount to be proven at trial.

## FACTUAL BACKGROUND

### THE PROJECT

10.     The Project is a design-bid-build venture undertaken by the MDC for the primary purpose of constructing an approximately four-mile long, deep rock tunnel to convey and temporarily store wastewater from portions of Hartford and West Hartford, Connecticut. When completed, the tunnel will minimize sewer overflows into the local waterways, the Connecticut River, and the Long Island Sound during major storm events.

11.     The Project is the largest infrastructure component of the MDC's Clean Water Project and has been identified as the largest contract ever awarded by the MDC.

### THE CONTRACT

12.     On June 30, 2016, KOJV and the MDC (collectively the "Parties") executed Contract No. 2 (2015B-27) ("Contract") for KOJV, as Contractor, to "perform the Work as specified or indicated in the Contract Documents."

13.     The Contract is comprised of several documents bound together as the "Project Manual" and is referred to in this Complaint as either the "Contract" or the "Contract Documents." The Contract Documents include, in addition to an extensive set of drawings and substantial information regarding the geotechnical conditions to be encountered, a set of Instructions to Bidders (Section 00100 of the Project Manual), the signed Agreement (Section 00500 of the Project Manual), a set of Standard General Conditions, EJCDC Document No. C-700, 2013 edition (as modified) (Section 00700 of the Project Manual), and a set of Supplementary Provisions (beginning at Section 00800 of the Project Manual).  True and accurate copies of these specifically identified Contract Documents are attached hereto as Exhibit 1.

14.     The Contract Documents, including all of the incorporated documents, were drafted solely by the MDC and/or entities acting on its behalf, including its engineering team, representatives, and consultants.

15.     Article 2 of the signed Agreement, entitled *Engineer and Construction Manager*, indicates that the Project was designed by AECOM Technical Services, Inc. ("AECOM") and that the MDC had engaged Jacobs Project Management Company ("Jacobs") as its Construction Manager to act as its "authorized agent, representative and Administrator for the Project as set forth in the Contract Documents."

16.     Article 3 of the signed Agreement, entitled *Contract Time*, established the Contract time of performance to be 2,050 calendar days commencing on the date the Notice to Proceed was issued by the MDC.

17.     Article 4 of the signed Agreement, entitled *Contract Price*, established the total award value of the Contract to be $279,400,000.00.

18.     Article 7 of the signed Agreement, entitled *Liquidated Damages*, links the 2,050-calendar day time of performance to the Substantial Completion Milestone and established four (4) additional Interim Milestones.  Article 7 of the signed Agreement also set forth the liquidated damages that would be assessed for the failure to meet the established Milestones.

19.     Article 5.04 of the Standard General Conditions, entitled *Differing Subsurface or Physical Conditions (excluding Underground Facilities)*, provides in relevant part as follows:

A.     *Notice of Differing Condition*: If Contractor or Owner believes that any subsurface or physical condition that is uncovered or revealed at the Site during the progress of the Work either:

1.  is of such a nature as to establish that any Technical Data on which Contractor is entitled to rely as provided in Paragraph 5.03 is materially inaccurate; or

2.  is of such a nature as to require a change in the Drawings or Specifications; or

3. differs materially from that shown or indicated in the Contract Documents; or

4. is of an unusual nature, and differs materially from conditions ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract Documents;

then Contractor or Owner shall, promptly, but no more than ten (10) days after the earlier of becoming aware thereof or the date when such condition should have been known and before further disturbing the subsurface or physical conditions or performing any Work in connection therewith (except in an emergency as required by Paragraph 7.15), notify Construction Manager and Owner or Contractor, in writing about such condition. Contractor shall not further disturb such condition or perform any Work in connection therewith (except with respect to an emergency) until receipt of a written statement permitting Contractor to do so.

20.     As reflected in the Instructions to Bidders that were included in the Project Manual, a Geotechnical Baseline Report ("GBR") was included in the Contract Documents to provide "a description of the subsurface conditions and interpretive information on the expected behavior of ground and groundwater during construction." A true and accurate copy of the GBR is attached hereto as Exhibit 2.

21.     The Instructions to Bidders indicated that the GBR, together with the accompanying Geotechnical Data Report ("GDR"), are provided for the Bidder's evaluation of the anticipated ground conditions, in planning the means and methods of construction and in preparing the Bid.

22.     The Instruction to Bidders instructed that "[t]he GBR shall be the basis of evaluation of any claims regarding differing site conditions."

23.     The GBR shows both the geologic profile for Reach 1 as "Portland Formation East" and the permeability (hydraulic conductivity) of the Portland Formation East rock mass as measured by boring packer tests.

24.     The data provided in the GBR regarding geologic conditions and permeability have an understood correlation to groundwater inflows and indicated to bidders that relatively small groundwater inflows (15 gpm or less) should be anticipated for the vast majority of the tunneling in Reach 1.

25.     The Contract Documents specified the injection of grout as the tunnel boring machine ("TBM") advanced to fill the annulus void between the installed concrete liner segments and the surrounding rock.  The Contract Documents specified that this annulus grouting be accomplished using a two-component grout with certain characteristics, including specified gel times.  The designation of the specified two-component annulus grout for an open mode TBM is appropriate only if the groundwater inflows into the tunnel were relatively small and becomes ineffective using an open mode TBM with active running ground water.

26.      The tunneling method specified in the Contract Documents – use of an open single or double shielded TBM with fixed diameter precast concrete segmented lining with two-component annulus grout – is relatively sensitive to groundwater inflows and commonly experiences problems with higher inflow rates.  The contractually specified TBM is not appropriate for use in tunnels with relatively high groundwater inflows as experienced on the Project.

27.     The Contract Documents do not provide for any pre-excavation probing or grouting in connection with mining Reach 1.  Pre-excavation probing or grouting is necessary for mining of tunnels with high groundwater inflows as experienced in Reach 1.  The failure of the specifications to provide for these procedures reflects that the Project Designer, AECOM, believed that there would be relatively small ground water inflows in Reach 1 of the tunnel.

**KOJV'S BID**

28.     The indications in the GBR regarding the geologic formations and permeability of the rock being mined in Reach 1, as supported by the Contract Document's selection of an open-face TBM, requirement for the use of two component annulus grout, and lack of any specified probing and grouting in Reach 1, were of critical import to KOJV at bid time.

29.     KOJV based its fixed-price bid, including its anticipated productivity rates and the overall schedule for the Project, on the use of an open face TBM that met all of the design requirements in the Contract Documents, a Herrenknecht Single Shield TBM S-1052.

30.     Based upon the indications of subsurface conditions provided in the Contract Documents, KOJV's fixed-price bid did not include costs for extensive probing and grouting in advance of its mining work in Reach 1 of the tunnel.  Neither did KOJV's fixed-price bid include costs for extensive ground water mitigation measures for its work in Reach 1 of the tunnel.

**THE DIFFERING SITE CONDITIONS**

31.     The MDC issued KOJV the Notice to Proceed on August 1, 2016.

32.     KOJV's first production mining commenced in Reach 1 of the tunnel on or about October 22, 2018.

33.     Within the first two months of mining in Reach 1, KOJV experienced problems with grout wash out and high groundwater inflow readings.  KOJV immediately notified Jacobs in its daily TBM shift reports of cutterhead water inflows experienced in this section of tunnel that were significantly higher than indicated by the GBR or anticipated by KOJV.

34.     As its mining work proceeded, KOJV came to appreciate that, despite its compliance with the Contract's requirements, the annulus grouting specified in the Contract was proving ineffective as a result of substantial, unanticipated water inflows. On May 7, 2019 KOJV advised Jacobs that the operational problems it was experiencing, and in particular the

ineffectiveness of its annulus grouting, were attributable to excessive ground water inflows that amounted to a differing site condition. The issue was designated by KOJV at the time as "Contractor Change Order Proposal No. 06 – Excessive Ground Water in the Tunnel." ("Change Proposal").

35.     Throughout the remainder of 2019 and continuing through KOJV's completion of mining in Reach 1 in 2020, KOJV encountered extreme groundwater inflows, and KOJV's attempts to control the groundwater inflows with the contractually-specified TBM and grouting protocols proved ineffective to prevent the ongoing impacts to its mining operations.

36.     While Jacobs acknowledged that the contractually specified placement of annulus grout might be impacted by water inflows, Jacobs refused to acknowledge that the quantities of water being encountered by KOJV were materially different than indicated in the Contract Documents. Jacobs sought to shift the responsibility for the water inflows to KOJV, advising that the MDC believed "more robust operating procedures to control and manage water are needed by KOJV."

37.     Thus, KOJV was forced to substantially revise its tunneling operation in Reach 1 of the tunnel to mitigate the impacts of the excessive groundwater encountered and the insufficiency of the Contract-prescribed open mode TBM and grouting procedures, including installation of polyurethane bulkheads, backfill with pea gravel, use of weep holes, and performing substantial probing and grouting in advance of its mining work.

38.     As a direct result of the differing site conditions encountered and the defective TBM and grouting specifications, KOJV took additional and necessary steps to mitigate the ongoing impacts to its operations, including implementing revisions and augmentations to the Contract-

prescribed grouting procedures, developing and installing grout injection barriers in the annular gap behind the TBM, and weather stripping the installed tunnel's longitudinal segment joints.

39.     Despite these substantial and costly mitigation efforts, KOJV was unable to regain its planned schedule durations and mining productivity.  As a result, KOJV experienced significant schedule delays to its performance in Reach 1 for which KOJV is entitled to an extension of the Contract Time.

40.     The costs associated with KOJV's mitigation efforts and lower mining productivity were not included in KOJV's fixed-price bid, could not have been anticipated based upon the subsurface conditions in Reach 1 indicated in the Contract Documents and with the type of TBM and grouting procedures specified, and entitle KOJV to an adjustment of the Contract Price.

### CONSIDERATION OF KOJV'S CHANGE PROPOSAL

41.     On March 31, 2020, after substantial discussions and correspondence with the MDC and Jacobs regarding the differing site conditions encountered in Reach 1, KOJV elevated its Change Proposal to the Contract's Claims Process.

42.     By letter dated April 30, 2020, Jacobs acknowledged receipt of KOJV's March 31, 2020 letter and, citing Article 12.C of the Standard General Conditions, indicated that the MDC was interested in seeking resolution of the Parties' dispute through an exchange of information and direct negotiations.  Jacobs requested that KOJV submit additional information supporting its Change Proposal by June 30, 2020; however, that date was later extended by agreement of the Parties.

43.     Despite the agreement that KOJV be granted additional time beyond June 30, 2020 to provide additional information supporting its Change Proposal, Jacobs denied KOJV's Change Proposal on June 26, 2020, without the benefit of reviewing KOJV's additional analysis and

supporting information.  Jacobs nonetheless indicated that the MDC remained "open to discussion" regarding the additional compensation and additional time to which KOJV believed it was entitled.

44.    Accepting the MDC's invitation for continued discussions, on August 28, 2020, KOJV submitted a supplemental package of information supporting its Change Proposal demonstrating KOJV's right to an adjustment of the Contract Price in the amount of $41,716,262.00 and a 203-day extension to the Contract Time as a direct result of the differing site conditions encountered by KOJV while mining Reach 1 of the Project.  A true and accurate copy of KOJV's August 28, 2020 submission (without exhibits) is attached hereto as Exhibit 3.

45.    KOJV's August 28, 2020 submission included a number of forward priced estimates.  Based upon its actual costs incurred, KOJV subsequently reduced the adjustment of the Contract Price sought in connection with its Change Proposal to $37,170,417.   KOJV's correspondence showing the actual cost Contract Price adjustment is attached hereto as Exhibit 4.

46.    The MDC took three months to review KOJV's August 28, 2020 submission for and then, by letter dated November 25, 2020, once against denied KOJV's Change Proposal in its entirety.

47.    By letter dated December 1, 2020, KOJV requested that the Contract-established Dispute Resolution Board ("DRB") conduct a hearing on the dispute regarding KOJV's Change Proposal.

48.    A hearing was conducted on April 20-21, 2021, during which each Party was allowed several hours for statements by principals, expert presentations, and rebuttal presentations. At the conclusion of the hearing day on April 21, 2021, after hearing the Parties' presentations and answers to questions posed by DRB members, the Chairman of the DRB declared the hearing to be officially closed.

49.     As of the date of this filing, more than 16 months after the DRB hearing officially closed, the DRB has not issued Recommendations on KOJV's Reach 1 differing site condition claim, nor has the DRB indicated that it intends to issue Recommendations.  The DRB's failure to issue Recommendations is directly attributable to actions taken by the MDC and its representatives.

50.     As a result of its failure to grant KOJV's request for an extension of the Contract Time, the MDC has wrongly assessed or threatened to assess liquidated damages.

51.     KOJV has satisfied all conditions precedent necessary to filing the causes of action raised in this Complaint.

52.     Any conditions precedent necessary to filing the causes of action raised in this Complaint that have not been satisfied have been waived or prevented from occurring.

## COUNT ONE – BREACH OF CONTRACT

53.     KOJV incorporates by reference Paragraphs 1 through 52 as though set forth herein in full.

54.     Under the provisions of the Contract Documents, the MDC had certain express and implied obligations to KOJV.  The MDC breached those express and implied obligations by, among other actions and inactions:

  i.      failing timely to make or cause to be made an investigation of the differing site conditions identified by KOJV;

  ii.     failing to make an equitable adjustment in the Contract Price and the Contract Time in accordance with the Contract Documents;

  iii.    failing to issue a Change Order amending the Contract Price and the Contract Time in accordance with the Contract Documents;

  iv.     wrongly assessing and/or threatening to assess liquidated damages;

  v.      failing to make payments to KOJV when they were due and owing under the Contract Documents; and

11

vi.      supplying defective and deficient Contract Documents.

55.      As a direct result of the MDC's breaches, KOJV has incurred substantial damages.

WHEREFORE, Plaintiff Kenny/Obayashi IV, A Joint Venture LLP respectfully requests

that this Honorable Court:

i.   enter judgment in favor of KOJV and against the MDC in an amount to be proven
     at trial but not less than $37,170,417, plus interest; and

ii.  grant KOJV such other and further relief as the Court deems appropriate.


Dated: October 5, 2022


                                        Respectfully submitted


                        By: _____
                             Michael J. Donnelly - ct 07974
                             Murtha Cullina, LLP
                             280 Trumbull Street, 12th Floor
                             Hartford, CT  06103
                             Telephone:  860-240-6000
                             Facsimile: 860-240-6150
                             mdonnelly@murthalaw.com

                             Attorney for Plaintiff
                             *Kenny/Obayashi IV, A Joint Venture*