UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNY/OBAYASHI IV, A JOINT VENTURE,<br><br>    Plaintiff,<br><br>v.<br><br>THE METROPOLITAN DISTRICT, HARTFORD COUNTY,<br><br>    Defendant. | Case No. 3:22-cv-01237-SRU |

PLAINTIFF'S EMERGENCY MOTION TO
ENFORCE SETTLEMENT AGREEMENT AND FOR OTHER RELIEF

Plaintiff Kenny/Obayashi IV, a Joint Venture LLP ("KOJV" or "Plaintiff"), by counsel, submits this Emergency Motion to: (a) Enforce the Settlement Agreement, (b) for Interest, (c) for Attorneys' Fees, (d) for Expedited Consideration, (e) to Shorten MDC's Time to Respond to this motion, and (f) for Limited Expedited Discovery ("Motion"), and states as follows:

I.  **INTRODUCTION**

On December 17, 2024, the Metropolitan District, Hartford County ("MDC") agreed to pay KOJV $57,000,000 to settle the above-captioned litigation. With regard to the timing of the settlement payment, MDC's Chief Executive Officer, Scott Jellison, represented to KOJV that MDC's capital account had [at the time] sufficient funds to pay the settlement sum. Mr. Jellison further indicated that because of other routine obligations, MDC would likely pay the settlement sum to KOJV in two or three partial payments. In any event, Mr. Jellison represented that the $57 million would be paid expeditiously. <u>The only condition to the settlement expressed by MDC</u> on December 17th was approval by MDC's Board. The parties agreed to document the settlement agreement in a final change order.

The settlement agreement terms were contemporaneously confirmed in an email from the mediator sent to the parties' counsel that same day. On December 30, 2024, MDC confirmed in a letter to the Court that a settlement had been reached, advising: "The MDC and KOJV have negotiated settlement in principal [*sic*] subject to the MDC securing approval by its Board. The Parties anticipate this process could take up to January 31, 2025." MDC's Board approval was obtained much earlier; approval was obtained on January 13, 2025.

MDC has breached the parties' settlement agreement by insisting upon new conditions precedent to MDC's payment of the settlement amount that were never discussed during the mediation, were not agreed upon by the parties, and were not part of the settlement agreement. These new conditions precedent were not identified or included in the mediator's confirming email memorializing the settlement agreement, and they were not included in MDC's December 30, 2024 letter to the Court. Specifically, MDC now insists that the timing of the $57,000,000 settlement payment be conditioned on MDC's receipt of a decision, either approval or rejection, by a third-party, the Connecticut Department of Energy & Environmental Protection ("DEEP"), of the change orders that document the settlement agreement. For over two months, KOJV has attempted to finalize a written agreement confirming the settlement, including obtaining a date certain by which the $57 million will be paid. MDC has steadfastly refused to commit to any date certain to deliver the settlement payment, and the reasonable date for completion of the settlement process (payment deadline) of January 31, 2025 has long passed.

As set forth below, KOJV requests that the Court: (i) enforce the parties' agreement and order payment of the full settlement amount of $57 million; (ii) enter judgment against MDC in the amount of $57,000,000; (iii) assess interest against MDC at the statutory rate of 10% per annum on the unpaid Settlement Payment with an interest accrual start date of February 1, 2025, along

with attorneys' fees and costs pursuant to Connecticut law; and (iv) for other relief as set forth below.

## II. BACKGROUND

1. KOJV and MDC participated in a (second) mediation with Ty Laurie, as mediator, on December 16-17, 2024 in Hartford, Connecticut. *See* Paragraph 3 of the Declaration of Robert G. Barbour in Support of the Motion ("Barbour Declaration").

2. On the evening of December 17, 2024, KOJV and MDC reached agreement to settle all disputes between the parties in exchange for MDC's payment of $57,000,000 to KOJV ("Settlement Payment"). Barbour Decl. ¶ 4. Shortly after that agreement was reached, MDC's Chief Executive Officer, Scott Jellison, represented to KOJV that MDC had sufficient funds in its bank account to make the Settlement Payment, but that MDC would likely break the payment into "two to three" wire transfers to ensure that sufficient funds remained in its account to cover other obligations. *Id.* MDC's District Counsel, Chris Stone, also committed to giving KOJV sufficient documentation so that KOJV could document the settlement on its books and records for the year 2024. *Id.* KOJV expressed its desire to receive the Settlement Payment as quickly as possible,[1] and MDC understood and agreed. *Id.* While the parties agreed to document the settlement in one or more final change orders, there was absolutely no discussion nor agreement at the mediation that MDC's obligation to deliver the Settlement Payment was conditioned upon any approval from DEEP—a third party that did not attend the mediation and over whom KOJV has no control. *Id.* To be clear, there was absolutely no discussion, negotiation, or agreement of "all sides" concerning

---

[1] The draft Settlement Agreement prepared by KOJV and shared with MDC on December 18, 2025, included a December 31, 2025 settlement payment date

3

any "final change order *proposal* ('COP')" as MDC's counsel represented in its February 28, 2025 letter to the Court.

3. The same day, the mediator transmitted the following email memorializing the settlement:

> All, congratulations on your mediated settlement. Per our discussion with you, your teams and principals, you will circulate settlement terms for a $[57]M[2] settlement of all claims and counterclaims, including contract balance/retention. You will document via change order and obtain Board approval at the January 13 meeting.

Barbour Decl. ¶ 5; **Exhibit A**. Consistent with the negotiations, the mediator's settlement confirmation email did not mention approval from DEEP as a condition to MDC making the Settlement Payment. *Id.* MDC did not take any exception to the mediator's response, including the absence in the mediator's email of any indication that approval from DEEP was a condition to MDC making the Settlement Payment. *Id.*

4. There are four components to the settlement: (1) formalization of settlement and release terms; (2) preparation of a change order or change orders to reflect or document the settlement agreement; (3) approval by MDC's Board at the January 13, 2025 meeting; and (4) payment of the $57,000,000 to KOJV. Barbour Decl. ¶ 6.

5. On December 18, 2024, KOJV transmitted a draft settlement agreement to MDC. Barbour Decl. ¶ 7; **Exhibit B**. The December 18, 2024 draft contained terms requiring MDC's Settlement Payment on or before December 31, 2024. *Id.*

6. On December 30, 2024, MDC and KOJV submitted a joint letter to the Court requesting a stay of the litigation, advising that "[t]he MDC and KOJV have negotiated settlement

---

[2] Mr. Laurie's initial email at 5:03 PM mistakenly stated that the settlement was for $75 million. In a follow up email at 6:04 PM, Mr. Laurie corrected his typo to correctly state that the settlement was $57 million.

in principle subject to MDC securing approval by its Board. The Parties anticipate that this process could take up to January 31, 2025." Barbour Decl. ¶ 8; **Exhibit C**. In response, the Court entered a stay of the litigation through January 31, 2025. *See* Dkt. No. 132.

7. On January 13, 2025, MDC's Board voted to approve the settlement.[3] At the public hearing, MDC's District Counsel, Chris Stone, represented that MDC had committed to acting "expeditiously." *See* Barbour Decl. ¶ 9; Hr'g Video 4:40:05 to 4:43:03.[4] Mr. Stone incorrectly represented to MDC's Board that KOJV knows that "they gotta wait, DEEP's gotta weigh in on this thing ... it's up to DEEP." Hr'g Video 4:40:05 to 4:43:03. Mr. Stone then downplayed the importance of making a timely payment by stating that "there's no clock ticking on interest" and that only if "there was unreasonable delay, like until September" might there be an interest claim. Hr'g Video at 4:43:23-4:44:00. In any event, Mr. Stone estimated that "hopefully within sixty (60) days from today" MDC would have a decision from DEEP on the funding. *Id.* at 4:42:42-4:43:03.

8. The January 13, 2025 MDC Board and Bureau of Public Works meeting minutes record that the settlement[5] was approved:

---

[3] MDC Board's January 13, 2025 hearing video ("Hearing Video") is available online at: https://www.youtube.com/watch?v=h19NrGxJOIM. Following an executive session, the settlement was discussed in open session commencing at 4:39:01.

[4] MDC Board's discussion concerning timing of the settlement occurs between 4:40:05 to 4:43:03. Mr. Stone further stated that he anticipated the DEEP approval process to take approximately sixty (60) days. *Id.*

[5] MDC's decision to seek approval from its Board to settle "for the total sum of $51,000,000.00, by means of approved change order(s)" was made unilaterally and appears to be based upon MDC's calculation that approximately $6,000,000 of undisputed amounts remained due and owing to KOJV under the Contract. KOJV had no involvement with MDC's presentation of the settlement for approval to its Board.

> **BUREAU OF PUBLIC WORKS**
> **SETTLEMENT OF PENDING LITIGATION**
> **KENNY/OBAYASHI IV JOINT VENTURE v MDC**
>
> To:     District Board                                January 13, 2025
>
> From:   Bureau of Public Works
>
> **RESOLVED**, that pursuant to Section B2f of the By-Laws of The Metropolitan District, the Board of Commissioners of The Metropolitan District hereby authorizes District Counsel, or his designee, to settle the pending federal litigation captioned **KENNY/OBAYASHI IV JOINT VENTURE v MDC**, Docket No. 3:22-CV-01237-JBA (the "Civil Action"), for the total sum of $51,000,000.00, by means of approved change order(s) relating to differing site conditions encountered by the tunnel contractor, and as payment for the reasonable costs and expenses associated therewith, as full and final resolution of any and all additional contract payments relating to said change orders, subject to the proper execution of any and all documents reasonably necessary to effect these final change orders, including but not limited to filing a Stipulation of Dismissal, with prejudice and waiving all rights of appeal of the Civil Action; and
>
> **BE IT FURTHER RESOLVED**, that the Board of Commissioners recognizes that with the acknowledgment of the differing site conditions and approval of the related change orders, the District, in effect, waives any and all claims for liquidated damages relating to the construction delays associated with said differing site conditions.
>
> Respectfully submitted,
>
> *John S. Mirtle* (signature)
> John S. Mirtle, Esq.
> District Clerk

Barbour Decl. ¶ 10; **Exhibit D**. The foregoing MDC Board minutes do not condition the approved settlement upon approval from DEEP. Ex. D.

9. After approval of the settlement by its Board, MDC informed KOJV that two change orders had been submitted to DEEP – Change Order No. 24, which documented the differing site conditions encountered by KOJV and related payment and time extensions, and Change Order No. 25, which documented various credits previously asserted by MDC. Barbour Decl. ¶11.

10. On January 22, 2025, MDC transmitted its first suggested edits to the draft settlement agreement that KOJV transmitted to MDC over a month earlier. Barbour Decl. ¶ 12. MDC's January 22nd draft attempted to interject the following language concerning DEEP approval:

> ***Upon the consent*** of the State of Connecticut Department of Energy and Environmental Protection (DEEP) and approval of the MDC's Board of Commissioners ("Board"), MDC and KOJV shall execute

> a Final Change Order and/or other documentation necessary to effectuate payment of the Final Payment to KOJV and the appropriate adjustment in the Contract Price (the "Final Change Order").

Barbour Decl. ¶ 13; **Exhibit E** (emphasis added).  KOJV rejected the language regarding DEEP approval because no such condition was agreed upon as part of the settlement. Barbour Decl. ¶ 14.

11. KOJV and MDC then began negotiating a date certain by which MDC would make the Settlement Payment. Barbour Decl. ¶ 15.

12. On February 10, 2025, MDC's counsel transmitted a draft of the settlement agreement proposing March 15, 2025 as the date certain by which the Settlement Payment would be made, <u>without any reference to DEEP or DEEP's approval</u>.  Barbour Decl. ¶ 16; **Exhibit F**. Notably, the February 10, 2025 draft from MDC contains an undisputed provision for recovery of attorneys' fees and pre-judgment interest in the event the settlement agreement must be enforced:

> Should either Party initiate any action at law or in equity to enforce or interpret the terms of this Agreement, the prevailing Party shall be entitled to recover its ***reasonable attorneys' fees, costs, and necessary disbursements*** against the non-prevailing Party, in addition to any other appropriate relief, including without limit ***statutory prejudgment interest***.

Ex. F (Section 3.12) (emphasis added).

13. MDC subsequently reversed course and reiterated its demand that the timing of the Settlement Payment be conditioned on MDC's receipt of DEEP's response to the change orders submitted to DEEP by MDC.  Barbour Decl. ¶ 17.  As a justification for its timing demands, MDC's counsel referred to unspecified "regulations."  *Id.*  While MDC has consistently acknowledged its absolute obligation to pay KOJV the $57 million Settlement Payment, MDC has steadfastly refused to agree upon a date certain by which the Settlement Payment will be made.  *Id.*

7

### III.     ANALYSIS

#### A.     THE COURT SHOULD ENFORCE THE SETTLEMENT AGREEMENT

The Court may and should enforce the settlement agreement reached by the parties on December 17, 2024. As this Court has recognized:

> Under Connecticut law, the enforceability of a settlement agreement is determined using general principles of contract law. A contract is binding if the parties have mutually assented to the terms, and where the terms of the agreement are "clear and unambiguous." So long as there is mutual assent, it is irrelevant whether the parties have actually signed an agreement.

*Brandt v. MIT Dev. Corp.*, 552 F. Supp. 2d 304, 319 (D. Conn. 2008) (Underhill, J.) (internal citations omitted); *see also Backmon v. John D'Amelia & Assoc., LLC*, No. 3:18-cv-957, 2020WL311788, at *5 (D. Conn. Jan. 21, 2020) (Underhill, J.). Connecticut courts employ a three-part test to evaluate mutual assent to a settlement: "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." *Id.* citing *Omega Eng'g, Inc. v. Omega S.A.*, 432 F.3d 437, 443 (2d. Cir. 2005). "The intention of the parties manifested by their words and acts is essential to determin[ing]" whether the parties entered into a settlement agreement. *Id.* "A trial court has the power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous.'" *Backmon*, *supra*, at *6 (quoting *ValleCastro*, No. 3:13-cv-1441, No. 3:16-cv-277, 2017WL2945717 (D. Conn. Jul. 10, 2017) (Underhill, J.)).

This Court has noted that "in most cases where a settlement agreement has been enforced, it was reported to the court that the case had settled and all parties consented." *Brandt* at 320. Here, the parties informed the Court that the parties reached a settlement in principle, subject only to approval by MDC's Board, which occurred on January 13, 2025. *See* Ex. C (Dec. 30, 2024 Letter) ("MDC and KOJV have negotiated settlement in principle subject to the MDC securing

8

approval by its Board."). The Parties' December 30, 2024 Letter did not mention any condition relating to approval by DEEP, and the representation by the parties that they anticipated conclusion of the settlement process (which would include MDC's payment) by January 31, 2025, reflects that no such condition existed.

Here, the three-part test to enforce the agreement is clearly satisfied. The first prong concerning the language used by the parties is satisfied by the parties' December 30, 2024 letter to the Court, the mediator's December 17, 2024 settlement agreement confirmation email, and the subsequent draft agreements exchanged by the parties, all of which unequivocally reflect MDC's agreement to pay KOJV $57,000,000 upon approval by MDC's Board, which occurred on January 13, 2025.

The second prong of the test is satisfied because the circumstances clearly indicate that a settlement was reached. The parties represented to the Court that a settlement had been reached in connection with seeking a stay of the litigation. The parties then exchanged drafts of an agreement, all of which contained the same basic terms: MDC would pay KOJV $57,000,000 upon approval from MDC's Board and the settlement would be documented via change order. Each attempt by MDC to interject a condition concerning DEEP approval was immediately rejected by KOJV, and MDC concurred with not including any DEEP approval, during the back and forth exchange of draft settlement agreements. To be clear, the parties exchanged drafts that contained a date certain for MDC's payment *without* reference to DEEP approval, although these drafts were ultimately rejected by MDC's decision makers.

The third prong of the test is satisfied because the settlement accomplished objectives for both sides. For MDC, it was able to avoid trial and manage the risk associated with KOJV's asserted claims. For KOJV, it was able to collect a portion of the amounts it believes KOJV was

9

owed under its construction contract. Both parties were able to stop incurring legal fees for litigating the case and obtain a certain, controllable outcome for a complex construction dispute.

The facts make clear that a settlement between KOJV and MDC was reached concerning the undisputed portions of the draft settlement agreement attached as Exhibit F including, without limitation, the following: (1) payment by MDC to KOJV of $57,000,000 in exchange for mutual releases and dismissal of this litigation and a pending related state court action; (2) approval by the Board of the settlement on January 13, 2025 (completed); (3) documentation of the settlement in change orders (completed, pending party signatures contemporaneous with the signing of the settlement agreement); and (4) prevailing party (KOJV) attorneys' fees, costs, and pre-judgment interest to enforce the settlement. The Court should enforce the settlement against MDC according to these terms and enter judgment against MDC. *See, e.g., Backmon* at *10 ("I conclude that the terms contained in the Defendants' draft settlement agreement…set out the material terms at the April 29 Conference. That settlement agreement should be enforced.").

### B. IT IS APPROPRIATE FOR THE COURT TO INFER A REASONABLE TIME FOR PERFORMANCE

Under Connecticut law, "when the terms of a contract's time for performance are indefinite, the promised performance must be rendered within a reasonable time." *LeVelle v. Ecoair Corp.*, 74 Conn. App. 710, 726 (2003) (affirming trial court holding that "plaintiff's debt was due and payable because a reasonable time had expired.") (citing *DeCarlo v. Doll, Inc. v. Dilozir*, 45 Conn. App. 633, 643-44 (1997) (holding that "'paid in full at the time of financing' is not a condition precedent but a date of payment set by the defendant")).

Here, MDC represented to KOJV at the mediation on December 17, 2024 that the settlement would be made as quickly as possible and that MDC likely had the necessary funds in its bank account. In MDC's letter to the Court dated December 30, 2024, MDC represented that

10

the approval process could take until January 31, 2025. In fact, MDC Board approval occurred on January 13, 2025. ***Because MDC had Board approval and the funds to pay KOJV on January 13, 2025, MDC could have and should have paid the full Settlement Payment to KOJV then, but certainly no later than January 31, 2025***.

Accordingly, it is reasonable for the Court to find that the reasonable time for MDC to pay the Settlement Payment was on or before January 31, 2025, and the Court should enter judgment against MDC in the amount of $57,000,000, plus pre-judgment interest and attorneys' fees and costs as set forth below, plus post-judgment interest.

### C. IT IS APPROPRIATE FOR THE COURT TO ASSESS PRE-JUDGMENT INTEREST AGAINST MDC

KOJV loses the time-value of the Settlement Amount for every day MDC continues to withhold the Settlement Payment. In the 73 days that passed between December 17, 2025 (the date the settlement was reached) and the filing of this motion, KOJV has lost $1,140,000 in the time-value of money calculated at the statutory rate of ten percent (10%) per annum under Conn. Gen. Stat. § 37-3a. Pre-judgment interest is permitted by the undisputed portion of the settlement agreement. *See* Ex. F (Section 3.12), *e.g., Backmon* at *10 ("I conclude that the terms contained in the Defendants' draft settlement agreement…set out the material terms at the April 29 Conference. That settlement agreement should be enforced."). In accordance with the undisputed portion of the settlement agreement and the reasonable date for payment (January 31, 2025), pre-judgment interest should be assessed against MDC at ten percent (10%) per annum ($15,616 per day) from February 1, 2025 until paid in full (including all interest). *See* Conn. Gen. Stat. § 37-3a.

Even if pre-judgment interest were not expressly permitted by the undisputed portions of the settlement agreement, it is appropriate for the Court to award pre-judgment interest to KOJV

11

under Conn. Gen. Stat. § 37-3a under the present circumstances. "Under § 37–3a, an allowance of prejudgment interest turns on 'whether the detention of the money is or is not wrongful under the circumstances…Such a factbound determination lies within the trial court's discretion.'" *Spearhead Const. Corp. v. Bianco*, 39 Conn.App. 122, 135 (1995). As set forth above, it was wrongful for MDC to fail to pay the Settlement Payment to KOJV on or before a reasonable date for payment, January 31, 2025. In the approximately 2.5 month period since MDC agreed to pay KOJV the Settlement Payment, MDC has wrongly withheld the Settlement Payment from KOJV based on the unfounded and untenable claim that a decision by DEEP was required before MDC was obligated to pay KOJV. As such, the Court should award pre-judgment interest to KOJV and against MDC under Conn. Gen. Stat. § 37-3a. at the rate of ten percent (10%) per annum starting on February 1, 2025. *West Haven Sound Dev. Corp. v. City of West Haven*, 207 Conn. 308, 321 (1988) ("Interest on [prejudgment interest] damages ordinarily begins to run from the time it is due and payable to the plaintiff.").

### D. IT IS APPROPRIATE FOR THE COURT TO AWARD ATTORNEYS' FEES & COSTS FOR THIS MOTION TO KOJV

It is appropriate for the Court to award attorneys' fees and pre-judgment interest to KOJV for the costs it incurred in bringing this Motion. The undisputed portions of the draft settlement agreement (Ex. F) contain a clause that allows for the recovery of attorneys' fees to enforce the settlement and pre-judgment interest. *See* Ex. F (Section 3.12); Paragraph 12, *supra*. Under Connecticut law, "[a]greements that end lawsuits are contracts…" *Westphal v. Heon*, No. CV166059378S, 2017 WL 715726, at *3 (Conn. Super. Ct. Jan. 11, 2017). Therefore, terms that are clear and unambiguous are valid and enforceable. *Id.* As such, this Court should enforce the settlement agreement as agreed to by KOJV and MDC, including an award of attorneys' fees and pre-judgment interest to KOJV.

As a separate basis for an award of attorneys' fees, this Court's inherent powers include the authority to sanction a party where it "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:13-CV-293(AWT), 2014 WL 1094451, at *3 (D. Conn. March 19, 2014) (quoting *Chambers v. NASCO*, 501 U.S. 32, 54-55 (1991), emphasis in original). A party acts in bad faith when it improperly forestalls or delays its performance under a settlement agreement, such as failing to make an agreed-upon settlement payment within reasonable time. *See Travelers Indem. Co.*, *supra*, at *3 (party's failure to make settlement payments was sanctionable, as it "continue[d] to have the use of the money for additional time at [the other party's expense]"). This is particularly applicable when the actions are consistent with a long-standing history of non-payment or other tactics to avoid or delay compliance with contract obligations, despite the non-compliant party's ability to comply with said obligations. *Id*. MDC affirmatively represented that it would make a prompt payment and that it possessed the funds needed to pay the Settlement Payment. Now, MDC is insisting upon conditions precedent to payment that were never discussed, much less agreed to, by the parties. It is appropriate for the Court to assess attorneys' fees against MDC.

E.    REQUEST FOR EXPEDITED DISCOVERY

While KOJV believes that the record is clear, to the extent the Court determines that additional evidence is necessary to resolve this Motion, KOJV requests that the Court grant KOJV limited accelerated discovery through requests for admission, interrogatories, and a deposition of MDC's Chief Executive Officer, Scott Jellison. Among other things, KOJV will seek information relating to the amount of money MDC has had in its capital bank account since December 17, 2024.

### F. REQUEST FOR EXPEDITED CONSIDERATION AND TO SHORTEN TIME FOR MDC'S RESPONSE TO THE MOTION

In accordance with Local Rule 7(a)(6), KOJV requests expedited consideration of this Motion. Good cause exists to grant expedited consideration because MDC continues to withhold amounts due and owing to KOJV and the time-value of money on the Settlement Amount equals $15,616 per day calculated at the statutory ten percent (10%) rate.

In connection with the requested expedited consideration, KOJV requests that the Court shorten the time for MDC to respond to this Motion to seven (7) days pursuant to Fed. R. Civ. P. 6(c)(1)(C) ("A written motion and notice of the hearing must be served at least 14 days before the time specified for the hearing, with the following exceptions…(C) when a court order—which a party may, for good cause, apply for ex parte—sets a different time."). Good cause exists because of the exigencies explained above and, because MDC has sufficient knowledge of the facts and circumstances surrounding this Motion and the settlement, additional time is not needed for MDC to provide a responsive brief.

WHEREFORE, for reasons set forth herein, KOJV requests that the Court enter an Order:

a. Enforcing the settlement agreed to by the parties on December 17, 2024 as set forth in the draft settlement agreement attached as Exhibit F, except to require immediate payment of the Settlement Amount to KOJV and awarding interest at the rate of ten percent (10%) per annum on the Settlement Amount from February 1, 2025 until fully paid;

b. Entering judgment in favor of KOJV and against MDC in the remaining amount, plus interest at the rate of ten percent (10%) per annum on the judgment and any unpaid amounts thereof;

c. Awarding KOJV attorneys' fees and costs associated with bringing this Motion;

d. Allowing for expedited consideration of this Motion and shortening MDC's time to respond to the Motion to seven (7) days from the date of filing;

e. Allowing for limited, expedited discovery by KOJV of MDC in the form of requests for documents and admissions, interrogatories, and a single deposition of MDC's Chief Executive Officer, Scott Jellison; and

    f.  Awarding such other and further relief as the Court deems necessary and appropriate.

Dated: February 28, 2025

Respectfully submitted,

By: /s/ *Michael J. Donnelly*
Michael J. Donnelly - ct 07974
**HARRIS BEACH MURTHA CULLINA PLLC**
280 Trumbull Street, 12th Floor
Hartford, CT  06103
Telephone:  860-240-6000
Facsimile: 860-240-6150
mdonnelly@murthalaw.com

Robert G. Barbour – *pro hac vice*
Richard G. Mann, Jr. – *pro hac vice*
Jonathan R. Wright – *pro hac vice*
**WATT, TIEDER, HOFFAR & FITZGERALD, LLP**
1765 Greensboro Station Place
Suite 1000
McLean, VA 22102
Telephone: 703-749-1000
Facsimile: 703-893-8029

*Counsel for Plaintiff*
*Kenny/Obayashi IV, A Joint Venture*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I caused the foregoing Motion to Enforce Settlement to be served via the Court's CM/ECF electronic filing service upon all parties entitled to receive such service, including the following:

Timothy T. Corey
Hinckley Allen
20 Church Street
Hartford, CT 06103
Email: tcorey@hinckleyallen.com

David A. Hill, Jr.
Ford & Paulekas, LLP
280 Trumbull Street
Hartford, CT 06103
Email: dhill@fpllp.com

Christopher R. Stone
Chadwick & Stone
111 Founders Plaza
Suite 1702
East Hartford, CT 06108
860-610-4500
Fax: 860-610-4504
Email: cstone@themdc.com
*Counsel for Defendant, Metropolitan District*

/s/ *Michael J. Donnelly*
Michael J. Donnelly

20507355.6 104406.00001